Jared Allebest, #13485
Attorney for Plaintiffs
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ZACH JOHNSTON, an individual BARBIE JOHNSON, an individual, and Roes I-X | COMPLAINT |
| Plaintiffs, | Civil No. 1:18-cv-00003-EJF |
| vs. | Judge Evelyn J. Furse |
| INTERMOUNTAIN HEALTHCARE an organization, INTERMOUNTAIN NORTH OGDEN CLINIC an organization, McKay-Dee Hospital, an organization, ASL Communications, an organization and ROES I-X. | Jury Trial Requested |
| Defendants. | |

ZACH JOHNSTON (hereinafter "Mr. Johnston") and BARBIE JOHNSTON (hereinafter "Mrs. Johnston"), by and through their attorney JARED M. ALLEBEST of the Allebest Law Group, hereby submits the following:

### PRELIMINARY STATEMENT

1.     ZACH JOHNSTON, the Plaintiff, is an individual who is Deaf and communicates via American Sign Language.  He wears hearing aids. He is the husband of Barbie Johnston. On one or more occasions, the Defendants failed, or refused, to provide the requested accommodations for the Plaintiff.

2. BARBIE JOHNSTON, the Plaintiff, is an individual who is Deaf and communicates via American Sign Language.  She does not wear hearing aids or cochlear

implants of any kind. She is the wife of Zach Johnston. On one or more occasions, the Defendants failed, or refused, to provide the requested accommodations for the Plaintiff.

3.      Defendants, jointly and severally (including various agencies and divisions), lease and operate places of "Public accommodation" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 36.104.

4.      The Defendants (including their various agencies and divisions) are obligated by Title III of the ADA to ensure that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." §28 CFR 36.201

5.      The Defendants failed to establish within their agencies and divisions, policies, practices, and procedures required under the ADA to ensure that persons who are Deaf are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies and divisions) failed to assure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate people with disabilities from the benefits of public programs or services.

6.      The ADA is a legislative response to the fact that "historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

2

7. The Defendants failed to establish within their agencies and divisions, policies, practices, and procedures required under the ADA and Section 504 to ensure that persons who are Deaf, are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies and divisions) failed to assure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate people with disabilities from the benefits of public programs or services.

8.   Section 504 and its regulations require that any entity which receives federal funds to ensure that "no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity." 34 C.F.R. § 104.4 (a) Furthermore, the entity "in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap" refuse "a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service" or "otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 34 C.F.R. § 104.4 (b)(1)(vi,vii)

9.     The Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its regulations when their agents, or employees, at various times and places have refused to provide effective communication with a patient who is Deaf.

10. The Defendants failed to establish, within their agencies and divisions, policies,

3

practices, and procedures required under The Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18001 et seq. to ensure that persons who are Deaf are not subjected to discrimination. Section 1557 of the Patient Protection and Affordable Care Act (ACA), ensures that an individual is not excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability), under any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an Executive Agency or any entity established under Title I of the Affordable Care Act or its amendments. 42 USC 18116(a). This includes, but is not limited to, Meaningful Use funds or Medicaid funds.

11. Section 1557 requires covered entities to give "primary consideration" to the person with a disability's choice of auxiliary aid or service. 81 Fed. Reg. 31421. Auxiliary aids and services can include, as appropriate, qualified interpreters, a variety of assistive technology devices, and the provision of materials in alternative formats. 45 C.F.R. § 92.4. All covered entities, regardless of the number of employees, must provide appropriate auxiliary aids and services to people with impaired sensory, manual, or speaking skills, where necessary to afford those individuals an equal opportunity to benefit from the health program or activity. 45 C.F.R. § 92.202(b).

## JURISDICTION AND VENUE

12. This action arises under the law of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), 29 U.S.C. § 794a ("Section 504") and 42 U.S.C. § 18001 *et seq.* ("ACA"). The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. 1343(a)(3), as well as 42 U.S.C. §

12188(a) and 42 U.S.C. §12133, 29 U.S.C. § 794a and 42 U.S.C. § 2000d *et seq.* and 42 U.S.C. § 1983 for claims arising under color of law.

13.     Venue of this action is appropriate in the United States District Court for the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) and (c) as the claim arose in such district and, further, as the Defendants conduct business in such district.

## THE PARTIES

13.     ZACH JOHNSTON, the Plaintiff, is an individual who is Deaf and communicates via American Sign Language.  He wears hearing aids. He is the husband of Barbie Johnston.

14.  BARBIE JOHNSTON, the Plaintiff, is an individual who is Deaf and communicates via American Sign Language.  She does not wear hearing aids or cochlear implants of any kind. She is the wife of Zach Johnston.

15.     Intermountain Healthcare is a not-for-profit healthcare system and is the largest healthcare provider in the Intermountain West. Intermountain Healthcare provides hospital and other medical services in Utah and Idaho and also offers integrated managed care under the insurance brand SelectHealth. Intermountain Healthcare is headquartered in Salt Lake City, Utah, and has some 37,000 employees. Intermountain Healthcare owns and operates Intermountain North Ogden Clinic and McKay-Dee Hospital which are public entities as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Intermountain Healthcare Corporate and Executive Offices are located at 36 South State Street Salt Lake City, Utah 84111.

16. Intermountain North Ogden Clinic is a not-for-profit community focused health system operated by Intermountain Healthcare. North Ogden Clinic offers comprehensive family medicine and urgent medical care, plus a range of related services. Intermountain North Ogden Clinic is located at 2400 North Washington Blvd, North Ogden, Utah 84414

17. McKay-Dee Hospital is a not-for-profit community focused health system operated by Intermountain Healthcare. McKay-Dee Hospital offers nationally ranked programs including the Heart and Vascular Institute and Newborn ICU. Other programs include the Huntsman-Intermountain Cancer Center, McKay-Dee Spine Institute, Emergency and Trauma Services and the new Stewart Rehab Center. McKay-Dee Hospital serves northern Utah and portions of southeast Idaho and western Wyoming. It is located at 4401 Harrison Boulevard, Ogden, Utah 84403.

19. American Sign Language Communication, LLC is an interpreting agency that provides American Sign Language (ASL) interpreters, C.A.R.T services, conference interpreting and video conference interpreting (VCI) in Nevada and Utah. It is believed that ASL Communications is contracted with Intermountain Healthcare, Intermountain North Ogden Clinic and McKay-Dee Hospital as well as other medical facilities operated by Intermountain Healthcare to provide ASL interpreters to patients with a hearing loss upon request. ASL Communication has an office located at 40 E. Horizon Ridge Parkway Suite 102 Henderson Nevada 89002 and at 1149 W. 640 N. Orem, Utah 84057.

**FACTS**

20. Between July and August 2015, Mr. and Mrs. Johnston went to see Dr. Stacia Moyer at Intermountain North Ogden Clinic on several occasions. Dr. Moyer was Ms.

6

Johnston's OB/GYN doctor. Each time they went to their OB/GYN appointment, the ASL interpreter(s) cancelled on the appointment several times in a row. As a result, they met with Dr. Moyers without VRI or a certified and qualified ASL interpreter. Mr. and Mrs. Johnston were frustrated with the lack of ASL interpreters at these appointments because Mrs. Johnston was not getting the full communication access she needed in order to understand her doctor while she was pregnant with her daughter, Rain Johnston. Dr. Moyer tried to resolve the issue regarding the ASL interpreters not showing up, but the problem persisted. Dr. Moyer ultimately instructed McKay-Dee Hospital to provide ASL interpreters where Mrs. Johnston was scheduled to deliver her child.

21. Mrs. Johnson was 34 weeks pregnant when she was brought to McKay-Dee Hospital on August 26th, 2015. Her water had broken prior to being brought to the hospital. A qualified and certified ASL interpreter was not present at the hospital when she arrived there. As a result, Mrs. Johnston was confused and lost due to the fact that many different medical personnel were trying to communicate with her. She became scared for herself and her child because she couldn't understand anything that was going on. Finally, she was taken to a room and was instructed by a nurse to change out of her clothes in to a hospital gown. Mrs. Johnston requested a live ASL interpreter but one of the nurses replied that it would be better to get a video remote interpreter (VRI). Mrs. Johnston was upset by that suggestion. She reiterated her request for an ASL interpreter. A nurse said that she would make a call to get a live ASL interpreter.

22. Mrs. Johnston waited a while for an ASL interpreter, but one never arrived. She asked a nurse if a live ASL interpreter was contacted. The nurse informed Mrs. Johnston that no one had made the call for an ASL interpreter but that they would make the call

now. Shortly thereafter, a nurse approached Mrs. Johnston and told her that an ASL interpreter was not available to come to the hospital to interpret at this time of the night and that they will call for a live ASL interpreter in the morning. My client was extremely upset and reluctantly agreed to use VRI for a short time because she wanted to be informed on what was going on. Coincidentally, Mrs. Johnston's sister, Ofelia McQuain, was the VRI interpreter and she interpreted until her shift had ended a few hours later.

23. Ofelia McQuain continued to interpret for her on her own time through FaceTime for a few more hours until her sister could no longer interpret. A nurse asked Mrs. Johnston if she wanted to get another ASL interpreter on VRI and she declined. She wanted a live, in person, ASL interpreter. Mrs. Johnston ended up communicating by text messages with her nurse.

24. On the following day of August 27th at about 7:00 AM, an anesthesiologist came in to give Mrs. Johnston an epidural. Neither an ASL interpreter or a VRI was provided when the anesthesiologist arrived. Mrs. Johnston was really scared and held her pillow hard because she did not know what he planned to do to her since she could not understand what was going on. When the doctor inserted the epidural, she screamed and started shaking. She asked for an ASL interpreter and one of the nurses told her that she will call for an ASL interpreter. Mrs. Johnston became extremely angry because of the lack of ASL interpreters that were not provided each time she visited her OB/GYN doctor. Now, there were no ASL interpreters for her at the hospital.

25. At approximately 8:30 AM to 8:45 AM, Mrs. Johnston began to go into labor. She alerted a nurse and Mrs. Johnston was rushed into a delivery room. The only people other than Mrs. Johnston in the delivery room was her OB/GYN doctor and a nurse. The

8

nurse attempted to comfort her, but it was not helpful because what Mrs. Johnston really needed was an ASL interpreter in that room. Instead, Mrs. Johnston had to hold her own cell phone so that she could watch her sister, Ofelia McQuain, interpret for her on FaceTime, while she gave birth to her daughter Rain. Mrs. Johnston gave birth to her daughter at 8:56 PM. The baby was sent to NICU because she was only 34 weeks old while Mrs. Johnston was moved to a recovery room.

26. An ASL interpreter finally showed up on Saturday morning at 10 PM. That interpreter stayed there for a few hours. Another interpreter showed up later and facilitated communication between the NICU doctor and Mrs. Johnston.

27. Less than a year later, on the morning of April 23rd, 2016, Mrs. Johnston's found her oldest daughter, River Johnston, passed out with fluid dripping out of her mouth. Her lips were blue, and she was staring at the ceiling with no response. Mrs. Johnston rushed her daughter to the Intermountain North Ogden Clinic. While the medical staff were looking over the Johnston's daughter, Mrs. Johnston asked for an ASL interpreter but reluctantly agreed to use VRI because her daughter was having a severe medical emergency and she wanted to understand what was going on immediately.  The medical staff at told Mrs. Johnston that River would needed to be transferred to an emergency room at McKay-Dee Hospital. An ambulance transferred both Mrs. Johnston and her daughter to the hospital. While en route to the hospital, she communicated by paper and pen with EMT personnel. When they arrived at the hospital, Rain was immediately taken to the Emergency Room. Mr. Johnston arrived at the hospital and both parents were taken into a room where a nurse provided VRI for the Deaf couple so that they could communicate with the ER doctor. The ER doctor was Dr. Brian Smith. Both Mr. and Mrs.

Johnston were unhappy that the hospital was using VRI and requested an ASL interpreter. Their request for an ASL interpreter was denied. Given the emergency, they ended up using VRI the whole time. They stayed at the hospital until about 4 AM.

28.   Mr. Johnston went to the Emergency Room at McKay-Dee Hospital on the afternoon of October 27th, 2016. He was complaining that he was feeling terrible pain in his head for a few weeks after suffering severe sinus infection and suffering from exposure to carbon monoxide in an enclosed room at work. Mr. and Mrs. Johnston met with Dr. Michael Halliday. Mrs. Johnston requested an ASL interpreter and the request was denied. At some point, Mr. Johnston's mother came to the hospital and interpreted for her son until VRI was brought into the room. Mrs. Johnston was very upset because the hospital refused her request for an ASL interpreter and felt like they were trying to force her to use VRI. However, she reluctantly used VRI because she was frustrated with her prior experiences of asking for an ASL interpreter and not ever getting one. The Johnstons spent about six hours at the ER room at McKay-Dee Hospital.

29. River Johnston suffered a seizure again on the afternoon of March 7th, 2017. The Johnstons rushed their daughter to the Intermountain North Ogden Clinic. River was treated by Dr. Timothy Yazzie. Mr. Johnston asked for an ASL interpreter, but the staff denied their request and insisted on using VRI. Using VRI was a difficult, frustrating and unpleasant experience for the Johnstons because the VRI repeatedly lost Wi-Fi connection which made it difficult to communicate with the interpreter on the other side of the screen. As a result, communication access was extremely limited. Mr. Johnston tried to call administration for help in dealing with the VRI problem, but they never called back.

30.   On one or more occasions, the Defendants stated openly that the reason why

they refused to provide an ASL interpreter, which is needed to establish effective communication with a Deaf patient, was a desire to avoid paying the cost of providing an ASL interpreter. There was no lack of need for ASL interpreters in order to satisfy the requirements for effective communication.

## **FIRST CAUSE OF ACTION**
(Injunction and Damages for Violation of Title III of the ADA for excluding from participation in or denying the benefits of the services, programs, or activities of a public entity)

31.    The Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 30 hereof, and incorporate the same herein by reference.

32.    Plaintiffs Mr. and Mrs. Johnston are qualified individuals with a disability as defined by the ADA, and were subjected to intentional discrimination at the hands of Intermountain Healthcare and their employees and agents by reason of the Plaintiffs' disabilities.

33.    The Defendants discriminated against the Plaintiffs because of their disability by failing to, or refusing to, provide a qualified and certified American Sign Language Interpreter upon request in connection during their medical visits to Intermountain North Ogden Clinic and McKay-Dee Hospital.

34.    The ADA places a positive duty on Intermountain Healthcare and other similar medical organizations that lease and operate public places of accommodation and that provide services to the public, to assure that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." §28 CFR 36.201.

35. The Defendants' failure to obtain a qualified and certified American Sign Language Interpreter was a "denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." §28 CFR 36.202(a).

36. The acts or omissions of the Defendants (or their agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much cherished independence. The injuries sustained by the Plaintiff relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of the ADA.

37. Because the Plaintiffs, Mr. and Mrs. Johnston was injured and suffered from severe emotional distress (much more than a typical person could be expected to endure) and they are entitled to compensation for such injuries.

38. Furthermore, the Plaintiffs suffered actual financial loss arising from hiring an attorney and spending time, money and resources to collect information and to obtain a resolution in this case.

39. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. §28 CFR 36.505.

## SECOND CAUSE OF ACTION
(Injunction and Damages for Violation of Section 504 of the Rehabilitation Act)

40. The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 39 hereof, and incorporate the same herein by reference.

41.     The Defendants are subject to requirements of section 504 because they receive federal funds to support services or programs.

42.     The Plaintiffs are qualified individuals with a disability as defined by Section 504 of the Rehabilitation Act, and is subjected to discrimination because they are individuals with a disability.

43.     Defendants discriminated against the Plaintiffs because they are individuals who are Deaf and also by refusing to provide ASL interpreters which could not establish effective communication with the Defendants.

44.     The Staff and Administrators, in all instances, individually and acting Defendants' agents, denied the Plaintiff's request to for an ASL interpreter.   They discriminated against them intentionally, recklessly and with malicious disregard for the Plaintiffs federally protected rights, because they are Deaf individuals.

45. The acts or omissions of Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of Section 504.

46.     Because the Plaintiffs are injured by the intentional acts of the Defendants and suffered from severe emotional distress (much more than a typical person could be expected to endure) they are entitled to compensation for such injuries.

47.    Furthermore, the Plaintiffs suffered actual financial loss by spending personal funds to travel to meet with their attorney which he would not have otherwise had to spend had the Defendants provided a live and in person ASL interpreter upon request.

48.    The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.

### THIRD CAUSE OF ACTION
(Violation of Title III, ADA–Disparate Treatment by Reason of Disability)

49.    The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 hereof, and incorporates the same herein by reference.

50.   The Defendants have engaged in discrimination by segregating, singling out or subjecting the Plaintiffs to disparate treatment by reason of their Deafness.

51.    Due to the discriminatory policies, practices and procedures at Intermountain Healthcare, Intermountain North Ogden Clinic and McKay-Dee Hospital, the Defendants' excluded, denied services to, segregated, or otherwise treated differently the Plaintiffs by reason of their disabilities.

52.    The Plaintiffs were, and are, subjected to discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests.

53.    This real and tangible injury has caused the Plaintiffs, Mr. and Mrs. Johnston, to incur costs in the form of fees and interest from their personal funds to travel to meet with their attorney, funds which they would not have otherwise had to spend had the Defendants refused to provide a certified and certified ASL interpreter by reason of their Deafness.

54.     Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiff's much-cherished independence. The injuries sustained by the Plaintiff's relating to the discrimination at the Defendants' hands are ongoing until the discriminatory conditions are corrected by policy and the source of the affront and indignity is rectified.

55.     The Plaintiff have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.  §28 CFR 36.505.

### FOURTH CAUSE OF ACTION
(Violation of Title III, ADA–Discriminatory Policies, Practices and Procedures)

56.     The Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 55 hereof, and incorporate the same herein by reference.

57.     Defendants engaged in discrimination by failing to modify their policies, practices, and procedures to ensure equal access to persons who are Deaf. As a result, by imposition or application of eligibility criteria that screen out, or tend to screen out, individuals with disabilities, specifically individuals who are Deaf, from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations including access to effective communication based on the needs of the individual and not a generalized assumption about a community.

58.     Furthermore, the Defendants discriminated by refusing to provide a certified and qualified ASL interpreter. As a result, they engaged in illegal administrative procedures towards Plaintiffs.

59.     By policies, practices and procedures, the Defendants failed or refused to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other

15

individuals without disabilities.

60.     Because of the Plaintiffs' disability, the Defendants denied them the ability to fully and equally participate in obtaining medical services from the Defendants that other non-disabled patients receive due to the Defendants' discriminatory behavior and practices.

61.     The Plaintiffs' was, and are, still being subjected to the discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests.

62.     This real and tangible injury has caused the Plaintiffs, Mr. and Mrs. Johnston to incur costs in the form of fees and interest from their personal funds to travel to meet with their attorney, funds which they would not have otherwise had to spend had the Defendants refused to provide a certified and certified ASL interpreter by reason of their Deafness.

63.     Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much cherished independence. The injuries sustained by the Plaintiffs relating to the discrimination at the Defendants' place of public accommodation are ongoing until the discriminatory conditions are corrected by granting the access required by law.

64.     The Plaintiffs, Mr. and Mrs. Johnston, have been forced to engage the services of an attorney.  Therefore, they are entitled to an award of attorney's fees and costs. §28 CFR 36.505.

### FIFTH CAUSE OF ACTION
(Injunction and Damages for Violation of Title III, ADA–Discriminatory Administrative Methods)

65.     The Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 64 hereof, and incorporate the same herein by reference.

66.     The Defendants engaged in discrimination by maintaining discriminatory and illegal administrative methods.  The Defendants discriminate by excluding people with disabilities.  Defendants have not taken such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals.

67.     Defendants have not properly trained employees as to the requirements for affording effective communication under the ADA.

68.     Because of the disability of deafness, the Plaintiffs cannot fully and equally access the services offered by the Defendant.  The Plaintiffs are regularly subjected to such discrimination and their opportunities are unfairly limited when businesses effectively ban them because of their disabilities.

69.     The Plaintiffs are subjected to the discriminatory conditions present at Intermountain North Ogden Clinic and McKay-Dee Hospital which are owned, leased and operated by Intermountain Healthcare. The Plaintiffs have suffered irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests.

70.     Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much cherished independence. The injuries sustained by the Plaintiffs relating to the discrimination at the Defendants' places of public accommodation are ongoing until the discriminatory conditions are corrected by either granting the access required by law or removing or shutting down the

source of the affront and indignity.

71.    The Plaintiffs Mr. and Mrs. Johnston, have been forced to engage the services of an attorney.  Therefore, they are entitled to an award of the attorney's fees and costs. §28 CFR 36.505.

## SIXTH CLAIM FOR RELIEF
(Injunction and Damages for Violation of The Patient Protection and Affordable Care Act (ACA))

72. The allegations in paragraphs 1-71 above and the below are incorporated herein by reference.

73.    The Defendants are subject to requirements of The Patient Protection and Affordable Care Act (ACA) because they receive federal funds to support services and/or programs, including, but is not limited to, Meaningful Use funds or Medicaid funds.

74.    The Plaintiffs are qualified individuals with a disability as defined by the Section 504 of the Rehabilitation Act, and is subjected to discrimination because they are individuals with a disability.

75. Section 1557 of the Patient Protection and Affordable Care Act (ACA), ensures that an individual is not excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability), under any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an Executive Agency or any entity established under Title I of the Affordable Care Act or its amendments. 42 USC 18116(a).

76.    Defendants discriminated against the Plaintiffs because they are Deaf individuals and refused to provide ASL interpreters to establish effective communication

with the Defendants.

77.   The Defendants failed to establish, within their agencies and divisions, policies, practices, and procedures required under The Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18001 et seq. to ensure that persons who are Deaf are not subjected to discrimination.

78.   Section 1557 requires covered entities to give "primary consideration" to the person with a disability's choice of auxiliary aid or service. 81 Fed. Reg. 31421. Auxiliary aids and services can include, as appropriate, qualified interpreters, a variety of assistive technology devices, and the provision of materials in alternative formats. 45 C.F.R. § 92.4.

79.   All covered entities, regardless of the number of employees, must provide appropriate auxiliary aids and services to people with impaired sensory, manual, or speaking skills, where necessary to afford those individuals an equal opportunity to benefit from the health program or activity. 45 C.F.R. § 92.202(b).

80.   The Staff and Administrators, in all instances, individually and acting Defendants' agents, denied the Plaintiff's request to for an ASL interpreter.   They discriminated against them intentionally, recklessly and with malicious disregard for the Plaintiffs' federally protected rights, because they are Deaf individuals.

81. The acts or omissions of Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiff relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected

by preliminary and permanent injunctions, enjoining the Defendants from further violations of The Patient Protection and Affordable Care Act (ACA).

82.     Because Plaintiffs' are injured by the intentional acts of the Defendants and suffered from severe emotional distress (much more than a typical person could be expected to endure) they are entitled to compensation for such injuries.

83.     Furthermore, the Plaintiffs suffered actual financial loss by spending personal funds to travel to meet with their attorney which they would not have otherwise had to spend had the Defendants not prevented them from communicating with their doctors via a certified and qualified ASL interpreter by reason of their Deafness.

84.     The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.

## SEVENTH CAUSE OF ACTION
### (Professional Negligence)

85. The allegations in paragraphs 1-84 above and the below are incorporated herein by reference.

86. Defendants owed the Plaintiff a duty to exercise reasonable care and diligence to assure provide effective communication to the Plaintiffs who are Deaf.

87. The duties that the defendants owed to the Plaintiff include, but are not limited to:

a. Assure that the Plaintiffs were provided with an American Sign Language interpreter at all of their medical visits with the Defendants;

c. Provide the Plaintiffs with a certified and qualified American Sign Language Interpreter to help the Plaintiffs understand any and all medical procedures that they, or their children, were required to undergo;

d. To comply with all state and federal antidiscrimination laws requiring place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation to provide effective communication to a patient with a hearing loss.

88. The Plaintiffs have suffered damages as a result of the Defendants' negligence.

89. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.

### *Prayer for Relief*

### **On the Plaintiff's First Cause of Action:**

(a) That this court exercise jurisdiction over this entire action;

(b) That this Court declare that the actions and failures to act of Defendants, including agencies, employees, and agents, violated the Americans with Disabilities Act's mandate to refrain from excluding "from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity" by reason of their deafness;

(c) For an order requiring the Defendant to adopt a comprehensive policy regarding communication access for members of the public who are Deaf and Hard of Hearing. If such a policy exists, an order requiring the administration to train its staff and agents including any Officers of the Law in the application of such a policy;

(d) For an order requiring the Defendants to compensate the Plaintiffs for actual losses and the substantial emotional distress the Defendants' actions caused to Mr. and Mrs. Johnston;

(e) For an order awarding the costs of this action and reasonable attorney's fees to Plaintiffs Mr. and Mrs. Zach and Barbie Johnston, and;

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Second Cause of Action:

(a) That this Court declare that the Defendants, Intermountain Healthcare, Intermountain North Ogden Clinic, McKay-Dee Hospital and ASL Communications are subject to the requirements of section 504 of the Rehabilitation Act.

(b) That actions and failures to act of Defendants, including agencies employees and agents, violated Section 504's mandate "from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity" by reason of their deafness;

(c) For an order requiring the Defendant to adopt a comprehensive policy regarding communication access for communication with members of the public who are Deaf and hard of hearing based on the needs of the individual members of the public. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(d) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(e) For the Plaintiff's attorney's fees, including litigation expenses, and costs of suit; and;

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

## On their Third Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendants, Defendants' agents, employees and assigns from discrimination and disparate treatment on the basis of disability in violation of Title III of the Americans with Disabilities Act; and specifically requiring the Defendants to adopt policies, practices and procedures that are fully compliant with the Americans with Disabilities Act;

(b) For an order requiring the Defendants to change their discriminatory policies, practices and procedures in order to ensure that individuals who are deaf are not discriminated against by staff, employees and agents and to ensure that people who are Deaf are actively accommodated in ways that afford them full participation in medical services and activities in a manner that is equal to that afforded persons without disabilities;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs, Mr. and Mrs. Zach and Barbie Johnston's legal fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

## On their Fourth Cause of Action:

(a) For a declaration that the Defendants is in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of Title III of the

Americans with Disabilities Act; and specifically requiring Defendants to cease policies, practices and procedures that are not fully compliant with the Americans with Disabilities Act;

(b) For an order requiring the Defendants to change their discriminatory administrative methods in order to assure that individuals who are Deaf are not discriminated against by staff, employees and agents by allowing persons who are Deaf to participate in medical services and activities in a manner that is equal to that afforded persons without disabilities;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs, Mr. and Mrs. Zach and Barbie Johnston's legal fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On their Fifth Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendants, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act; and specifically requiring Defendants to cease all policies, practices and procedures that are not fully compliant with the Americans with Disabilities Act;

(b) For an order requiring the Defendants to change their discriminatory administrative methods in order to ensure that individuals who are Deaf are not

24

discriminated against by staff, employees and agents by allowing persons who are Deaf to participate in medical events and activities in a manner that is equal to that afforded persons without disabilities;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs, Mr. and Mrs. Zach and Barbie Johnston's legal fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

## On their Sixth Cause of Action:

(a) That this Court declare that the Defendants, Intermountain Healthcare, Intermountain North Ogden Clinic, McKay-Dee Hospital and ASL Communications are subject to the requirements of section The Patient Protection and Affordable Care Act (ACA).

(b) That actions and failures to act of the Defendants, including agencies employees and agents, violated the ACA's mandate that individuals with disabilities shall not be excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability), under any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an Executive Agency or any entity established under Title I of the Affordable Care Act or its amendments. 42 USC 18116(a).

(c) For an order requiring the Defendants to adopt a comprehensive policy

regarding communication access for communication with members of the public who are Deaf and hard of hearing based on the needs of the individual members of the public. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(d) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(e) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and;

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On their Seventh Cause of Action:

(a) For a declaration that the Defendants have engaged in professional negligence by breaching the duty owed to the Plaintiff by failing to provide effective communications for a patient who is deaf or hearing impaired.

(b) For actual costs and compensatory damages for injuries caused by actual and proximate cause of the Defendant's breach of duty owed to the Plaintiff.

(c) For the Plaintiffs, Mr. and Mrs. Zach and Barbie Johnston's legal fees, including litigation expenses, and costs of suit; and

(d) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

/s/: Jared Allebest
Jared Allebest, #13485
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that a true and correct copy of the foregoing document was served this 8th day of January 2018, by mailing on said date copies thereof by United States mail, certified first class postage prepaid, address to:

Intermountain Healthcare
Corporate and Executive Offices
36 South State Street
Salt Lake City, Utah 84111

Intermountain North Ogden Clinic
2400 North Washington Blvd,
North Ogden, UT 84414

McKay-Dee Hospital
4401 Harrison Boulevard
Ogden, Utah 84403

ASL Communication
1149 W. 640 N.
Orem, Utah 84057

                    /s/: Jared Allebest
                    Jared Allebest, #13485
                    Attorney for Plaintiffs
                    8978 South Quarry Stone Way
                    Sandy, UT 84094
                    Cell: (949) 322-3991
                    Videophone: (801) 204-9055
                    Email: Jared@Allebest.com